IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MARK MOORE**, an individual, | Case No. 3:20-cv-01962-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **SPECIALIZED LOAN SERVICING, LLC**; **WF VICTORIA GRANTOR TRUST 2016-3**; **WATERFALL ASSET MANAGEMENT, LLC**; and **U.S. BANK TRUST, N.A.**, | |
| Defendants, | |

Leonard D. DuBoff. Edward T. Fu, The DuBoff Law Group, LLC, 6665 SW Hampton Street, Suite 200, Portland, OR 97223. Attorneys for Plaintiff.

Garrett S. Garfield, Holland & Knight, LLP, 601 SW Second Avenue Suite 1800, Portland, OR 97204. Attorney for Defendants.

**IMMERGUT, District Judge.**

    This matter comes before the Court on Defendants Specialized Loan Servicing, LLC, WF Victoria Grantor Trust 2016-3, Waterfall Asset Management, LLC, and U.S. Bank Trust, N.A.'s (collectively, "Defendants") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). ECF 15. Plaintiff Mark Moore brings claims against Defendants for breach of the contractual duty of good faith and fair dealing and intentional interference with prospective economic relations.

PAGE 1 – ORDER

This Court finds that Plaintiff's Complaint fails to state a claim upon which relief can be granted for both of his claims against Defendants. Accordingly, Defendants' Motion to Dismiss is granted.

**BACKGROUND**

The following facts are taken from Plaintiff's Complaint. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) ("On a motion to dismiss, all material facts are accepted as true and are construed in the light most favorable to the plaintiff."). On or around May 19, 2007, Plaintiff executed a Home Equity Line of Credit Agreement ("HELOC agreement") with Discover Bank with a credit limit of $250,000. ECF 1 at ¶¶ 9–10. To secure the loan, Plaintiff simultaneously executed a deed of trust on his residence in Beaverton, Oregon for the benefit of Discover Bank. *Id*. at ¶ 9. The deed was junior to an existing senior mortgage on Plaintiff's residence. *Id*.

The HELOC agreement provided a draw period during which Plaintiff could access the credit and had a maturity date of May 19, 2017. *Id*. at ¶ 10. The HELOC agreement contained an acceleration clause which made the entire loan balance due on the maturity date and did not provide for a separate repayment period. *Id*. However, the HELOC agreement stated that the lender had the discretion to extend the period to make payment. *Id*.

On or about September 24, 2016, Plaintiff received notice that the HELOC agreement and Trust Deed had been assigned to Defendant WF Victoria ("Victoria") and would be serviced by Defendant Specialized Loan Servicing ("SLS"). *Id*. at ¶ 11. Defendant Waterfall Asset Management ("Waterfall") is the owner and trustee of Victoria. *Id*. at ¶ 4. Defendant U.S. Bank Trust, N.A. ("U.S. Bank") is a trustee of Victoria. *Id*. at ¶ 5.

Around March 2017, Plaintiff was "made aware" that the HELOC agreement did not contain a separate repayment period and that the entire balance owed was due on the maturity date. *Id*. at ¶ 12. Plaintiff immediately began to make efforts to refinance both the HELOC and the senior mortgage. *Id*. As of March 2017, Plaintiff's balance on the HELOC was approximately $225,000. *Id*. at ¶ 13. He had been making regular monthly payments of approximately $650. *Id*.

On or about April 18, 2017, Plaintiff submitted a Request for Mortgage Assistance ("RMA") to Defendant SLS requesting additional time to pay off the HELOC in the event he could not obtain refinancing by the maturity date. *Id*. at ¶ 14. When he did not receive any response, Plaintiff submitted another RMA. *Id*. Plaintiff submitted a total of four RMAs before the maturity date of May 19, 2017 but could not obtain relief because the investor that owned the loan did not participate in the relief program. *Id*. Plaintiff was unable to complete refinancing of the HELOC by the maturity date. *Id*. at ¶ 16.

Plaintiff provided regular telephone updates to Defendant SLS while he continued his refinancing efforts. *Id*. at ¶ 15. During one such call, a representative of Defendant SLS informed Plaintiff that Defendant SLS would not report any delinquencies on the HELOC to outside parties until the delinquencies were over 90 days old. *Id*. Plaintiff understood this to mean that he would have up to 90 days after the maturity date to obtain refinancing without the outstanding HELOC balance adversely affecting his credit. *Id*.

Plaintiff submitted two payments to Defendant SLS after the maturity date passed: one via electronic payment on May 22, 2017, for $1,200 and another via check on June 20, 2017, for $1,000. *Id*. at ¶ 16. The May 22, 2017 payment was received and processed by Defendant SLS but the June 20, 2017 check payment was never deposited. *Id*.

In July 2017, Plaintiff obtained preliminary approval for approximately $500,000 in financing from Mortgage Express for a new loan that would refinance both the senior mortgage and the HELOC at a lower interest rate. *Id*. at ¶ 17. To close refinancing, Mortgage Express needed to obtain a verification of Plaintiff's HELOC from Defendant SLS. *Id*. Defendant SLS provided a Verification of Mortgage to Mortgage Express on August 18, 2017. *Id.* The Verification of Mortgage stated that Plaintiff had been delinquent zero times in both the present and preceding year. *Id*. However, the Verification of Mortgage also contained the following statement: "Days Delinquent excluding Grace days: 70." *Id*. A representative from Mortgage Express informed Plaintiff that she had never seen a Verification of Mortgage that said payment history was perfect yet delinquent. *Id*.

The seemingly contradictory information in the Verification of Mortgage led Mortgage Express to request a "no score" credit report for Plaintiff. *Id*. at ¶ 18. The no-score credit report showed that Defendant SLS had reported Plaintiff as being 60 days late on his HELOC agreement payments despite Defendant SLS's assurance that his delinquencies would not be reported for 90 days. *Id*. Mortgage Express then requested that Defendant SLS provide a letter stating that Plaintiff had never made any late HELOC agreement payments. *Id*. at ¶ 19. After not receiving a response from Defendant SLS for two weeks, Mortgage Express followed up with a phone call to Defendant SLS on August 31, 2017. *Id*. at ¶ 20. In response, Defendant SLS faxed Mortgage Express a letter confirming that all payments made by Plaintiff from June 2014 until the maturity date in May 2017 were on time. *Id*. The letter also stated that "[d]eliquency on this loan did not occur until the loan reached the maturity date in which the balance was due in full." *Id*. Mortgage Express then requested that Defendant SLS provide an additional letter stating that

Defendant SLS would not accept partial payments after the maturity date. *Id*. at ¶ 21. Defendant SLS did not provide the requested letter. *Id*.

On or about August 31, 2017, Plaintiff called Defendant Waterfall to discuss his loan and was directed to Traci Newman. *Id*. at ¶ 23. Newman asked Plaintiff to provide any documentation concerning his loan so she could forward it to Defendant SLS. *Id*. Plaintiff provided the requested documentation as well as a summary and timeline of events to Newman via email and on the telephone on September 1, 2017. *Id*. at ¶ 24. Plaintiff did not hear from Newman or Defendant Waterfall again. *Id*.

Plaintiff alleges that "[a]s a result of Defendant SLS's contradictory statements regarding the status of Plaintiff's delinquency, Mortgage Express was prohibited by federal law from providing conventional financing to Plaintiff." *Id*. at ¶ 25. By that time, Defendant SLS had reported a delinquency of over 90 days to credit reporting agencies. *Id*. at ¶ 26. Plaintiff was therefore unable to obtain conventional financing from alternative lenders. *Id*.

On or about January 31, 2018, Plaintiff received a Notice of Default and Notice of Intent to Foreclose from Defendant SLS. *Id*. at ¶ 28. On February 24, 2018, Plaintiff submitted a response to the Notice of Default and Notice of Intent to Foreclose requesting temporary relief in lieu of foreclosure. *Id*. at ¶ 29. Plaintiff and Defendant SLS entered the pre-foreclosure mediation process as required under Oregon law. *Id*. at ¶ 30. During this process, Defendant SLS's foreclosure counsel told Plaintiff that she had been specifically instructed to pursue foreclosure on Plaintiff's residence. *Id*. Plaintiff concluded that attempts to negotiate with Defendant SLS would be futile and therefore liquidated his retirement accounts and paid the HELOC off in full on November 14, 2018 to avoid foreclosure. *Id*. at ¶ 31.

**STANDARDS**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

Further, in deciding a motion to dismiss, courts may under certain circumstances look beyond the four corners of the pleading without converting the motion into a summary judgment motion under Rule 12(d). Specifically, courts can consider documents attached to the Complaint as well as documents "not physically attached to the complaint . . . if the documents' 'authenticity . . . is not contested' and 'the plaintiff's Complaint necessarily relies' on them." *Lee v. Los Angeles*, 250 F.3d 668, 668–89 (9th Cir. 2001) (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998)).

## DISCUSSION

### A. Breach of Contractual Duty of Good Faith and Fair Dealing

Plaintiff first claims that Defendants breached the implied covenant of good faith and fair dealing by "obstructing Plaintiff's efforts to refinance the HELOC by reporting a delinquency before the delinquency was 90 days old, in issuing multiple written statements that described Plaintiff's payment history in contradictory terms, in refusing to issue a letter stating that Defendant SLS would not accept late partial payments, and in failing to exercise its discretion to extend the repayment period." ECF 1 at ¶ 38.

Every contract contains an implied duty of good faith which must be applied in a manner that effectuates the objectively reasonable expectations of the parties. *Uptown Heights Assocs. Ltd. P'ship v. Seafirst Corp.*, 320 Or. 638, 645 (1995); *Or. Univ. Sys. v. Or. Pub. Employees Union, Loc. 503*, 185 Or. App. 506, 515 (2002) (the duty of good faith and fair dealing is implied "to fulfill the parties' reasonable expectations"). "The obligation of good faith does not vary the substantive terms of the bargain . . . nor does it provide a remedy for an unpleasantly motivated act that is expressly permitted by contract or statute." *U.S. Nat'l Bank of Or. v. Boge*, 311 Or.

PAGE 7 – ORDER

550, 567 (1991). A "party invoking its express, written contractual right does not, merely by doing so, violate its duty of good faith." *Uptown Heights*, 320 Or. at 645.

Citing *Uptown Heights*, Defendants argue that their conduct as alleged in the Complaint cannot state a claim for breach of the implied covenant of good faith and fair dealing because their conduct was consistent with the parties' objectively reasonable expectations. ECF 15 at 6–9. In *Uptown Heights*, the plaintiff-borrower sued its lender asserting a claim for breach of the implied contractual duty of good faith. 320 Or. at 641. The lender had financed the plaintiff's construction of an apartment building which the plaintiff struggled to make its monthly interest payments on. *Id*. at 642. The lender agreed to a six-month extension on the loan and then "assured" the plaintiff that it would "work with [the plaintiff] to resolve any problems surrounding the loan." *Id*. Nevertheless, the lender refused to grant the plaintiff a second extension and instead initiated foreclosure proceedings. *Id*. at 642–43. The lender also refused the plaintiff's request to postpone those proceedings until after the plaintiff found a buyer. *Id*. The lender instead foreclosed on the property and sold it to the same prospective buyer with whom the plaintiff had negotiated. *Id*. at 643–44. The Oregon Supreme Court affirmed the dismissal on the pleadings of the plaintiff's claim for breach of contractual duty of good faith and fair dealing, holding that the parties' agreement did not contain any preconditions on the lender's ability to foreclose and that, "[u]nder those terms, 'the parties agreed to—that is, reasonably expected—a unilateral, unrestricted exercise of discretion' in [lender's] choice of foreclosure as a remedy" in the case of the plaintiff's default. *Id*. at 648 (quoting *Pac. First Bank v. New Morgan Park Corp*., 319 Or. 342, 353 (1994)).

Here, as in *Uptown Heights*, Plaintiff fails to show Defendants alleged conduct is inconsistent with the parties' objectively reasonable expectations. First, Defendant SLS'

PAGE 8 – ORDER

reporting Plaintiff's delinquency to credit reporting agencies and refusal to accept late payments do not contradict the parties' reasonable expectations under the HELOC agreement of the deed of trust. Plaintiff admits to not timely paying the HELOC upon maturity, in breach of the plain terms of the agreement. ECF 1 at ¶ 16. Nothing in the HELOC agreement or the deed of trust reflects that Plaintiff should not have expected that when payments under the account were delinquent it would not be reported to credit reporting agencies or that late payments would be accepted after the loan had matured. Like the lender's assurance to work with the plaintiff in *Uptown Heights*, Defendant SLS's alleged assurance that it would not report Plaintiff's delinquency for 90 days did not alter the reasonable expectations of the parties that had been negotiated into the contract.[1]

Further, despite Plaintiff's allegation that Defendants issued written statements describing Plaintiff's payment history in "contradictory terms," the Verification of Mortgage Defendant SLS sent to Mortgage Express was accurate. Given the May 19, 2017 maturity date, the August 18, 2017 Verification of Mortgage correctly reported that Plaintiff had been delinquent for 70 days. ECF 1 at ¶ 16. Similarly, when Mortgage Express later requested a letter stating that Plaintiff had never made any late HELOC agreement payments, Defendant SLS faxed a letter accurately confirming that all payments made by Plaintiff from June 2014 until the maturity date in May 2017 were on time and that delinquency on the loan did not occur until after the loan reached the maturity date. *Id*. at ¶¶ 19–20. And while Defendant SLS did not send a letter stating it would not accept late partial payments in time for Plaintiff to refinance with Mortgage express, nothing in the HELOC or deed of trust obligated Defendant SLS to expedite the production of

---

[1] Plaintiff notably did not attempt to distinguish *Uptown Heights* in his response to Defendants' motion, nor did he analogize to any cases where conduct similar to that alleged in the Complaint stated a claim for breach of the implied covenant of good faith and fair dealing.

PAGE 9 – ORDER

paperwork needed to refinance Plaintiff's HELOC. The loan documents do not create an expectation that Defendant SLS should immediately provide all documents necessary upon demand in order for Plaintiff to complete the refinancing of his loan. Especially when Plaintiff was on notice since the day he executed the HELOC and deed of trust on May 19, 2007, over ten years prior, that the full amount outstanding was due on the maturity date and that there was no repayment period.

Finally, Plaintiff's allegation that Defendants' "fail[ure] to exercise its discretion to extend the repayment period" contradicted the reasonable expectations of the parties is belied by the plain text of the HELOC agreement. *See* ECF 15 at Exhibit A.[2] The HELOC agreement explicitly states that "[u]nless otherwise required by applicable law, [Defendants] are under no obligation to refinance the balloon payment" after the maturity date passes. *Id*. Given this language in the agreement, Plaintiff should have no reasonable expectation that Defendants would extend the repayment period upon the maturity date. Additionally, "[i]n general, reasonable expectations include the right of either party to further its own legitimate business interests." *U.S. Genes v. Vial*, 143 Or. App. 552, 559 (1996). Because Defendants were under no contractual obligation to extend the repayment period, any alleged motive for not permitting the extended payment plan is irrelevant. *See Boge*, 311 Or. at 567 (holding that the implied covenant of good faith and fair dealing does not "provide a remedy for an unpleasantly motivated act that is expressly permitted by contract").

---

[2] Defendants attached a complete copy of the HELOC agreement referenced and partially provided in the Complaint as Exhibit A to the Motion to Dismiss. Courts can consider documents attached to the Complaint as well as documents "not physically attached to the complaint . . . if the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them." *Lee*, 250 F.3d at 668–89 (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998)).

PAGE 10 – ORDER

In sum, the parties' reasonable expectations turn on the terms of the HELOC agreement itself and Defendants alleged conduct did not violate the terms of that agreement. While Plaintiff may find Defendants' actions objectionable, Plaintiff has failed to identify sufficient facts to state a claim for a breach of the contractual duty of good faith and fair dealing.

**B.    Intentional Interference with Prospective Economic Relations**

Plaintiff's second claim for relief alleges that "[w]ith knowledge of the prospective economic relationship between Plaintiff and Mortgage Express, Defendants have intentionally, wrongfully, and maliciously interfered with the same." ECF 1 at ¶ 45. Plaintiff alleges that Defendants obstructed his ability to refinance his HELOC. Yet Plaintiff fails to allege sufficient facts showing what actions constituted such an interference, that any such conduct was intentional, or that it involved improper means or an improper purpose.

To state a claim for intentional interference with prospective economic relations a plaintiff must prove: (1) the existence of a prospective economic advantage; (2) the intentional interference with that prospective economic advantage; (3) by the defendant; (4) accomplished through improper means or for an improper purpose; (5) a causal link between the interference and damage to the prospective economic advantage; and (6) damages. *Kraemer v. Harding*, 159 Or. App. 90, 104 (1999). The first element requires the existence of a prospective economic advantage between the plaintiff and a third party. *McGanty v. Staudenraus*, 321 Or. 532, 535 (1995).

Intentional interference with prospective economic relations claims serve "as a means of protecting contracting parties against interference in their contracts from *outside* parties." *Id*. at 536. To have a cognizable claim, the interference identified by the plaintiff must be "wrongful by some measure beyond the fact of the interference itself," which can take the form of "improper motives or from the use of some improper means." *Top Serv. Body Shop v. Allstate*

PAGE 11 – ORDER

*Ins. Co.*, 283 Or. 201, 209 (1978); *see Straube v. Larson*, 287 Or. 357, 361 (1979) (holding that a plaintiff must establish "not only . . . that defendant intentionally interfered with his business relationship but also that defendant had a duty of non-interference; I.e., that [defendant] interfered for an improper purpose rather than for a legitimate one, or that defendant used improper means which resulted in injury to plaintiff. Therefore, a case is made out which entitles plaintiff to go to a jury only 'when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself.'").

"If liability is based on improper means, 'then the means must violate some objective, identifiable standard, such as a statute or other regulation, or a recognized rule of common law, or, perhaps, an established standard of a trade or profession." *Sharma v. Providence Health & Services-Or.*, 289 Or. App. 644, 668 (2018) (quoting *Northwest Nat'l Gas Co. v. Chase Gardens, Inc.*, 328 Or. 487, 498 (1999)). "Examples of improper means include violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood." *Grimstad v. Knudsen*, 283 Or. App. 28, 57 (2016), *rev. den.*, 361 Or. 350 (2017) (internal quotation marks omitted). And if liability "is to be based on [defendant's] purpose, then the purpose must be to inflict injury on the plaintiff as such." *Northwest Nat'l Gas Co.*, 328 Or. at 498 (internal quotation marks omitted); *see also Top Serv. Body Shop*, 283 Or. at 212 (holding that evidence of acts that were "wholly consistent" with the defendant's "pursuit of its own business purposes as it saw them" did "not suffice to support an inference of the alleged improper purpose to injure" the plaintiff).

Plaintiff here alleges that Defendants interfered with his prospective economic relationship with Mortgage Express by "reporting a delinquency before the delinquency was 90 days old, in issuing multiple written statements that described Plaintiff's payment history in

PAGE 12 – ORDER

contradictory terms, in refusing to issue a letter stating that Defendant SLS would not accept late partial payments, and in failing to exercise its discretion to extend the repayment period." ECF 1 at ¶ 38. However, Plaintiff alleges no facts demonstrating that Defendants' acts or omissions were "wrongful by some measure beyond the fact of the interference itself." *Northwest Natural Gas Co.*, 328 Or. at 488.

Plaintiff alleges that after he submitted documents for consideration, Defendants did not provide him with mortgage refinance assistance because they did not participate in the assistance program. ECF 1 at ¶ 14. Plaintiff next alleges that Defendant SLS correctly reported a delinquency on his account despite him being under the impression that same would not occur. *Id.* ¶ 15. Defendant SLS then allegedly did not clarify what Plaintiff believed to be an inconsistency in a Verification of Mortgage provided to Mortgage Express and did not provide a separate letter stating that he had never made late HELOC monthly payments and would not accept partial payments after the Maturity Date. *Id.* ¶¶ 16-21. On these facts, one cannot plausibly infer an attempt to intentionally interfere with Plaintiff's refinancing attempts. Moreover, Defendant SLS' conduct, as alleged, cannot be reasonably construed as having been accomplished through "improper means" or with an "improper motive." Rather, all of Defendant SLS' actions were performed in accordance with the loan documents.

Accordingly, Plaintiff has failed to state a claim for intentional interference with prospective economic relations.

## CONCLUSION

For these reasons, Defendants' Motion to Dismiss, ECF 15, is GRANTED. Plaintiff's Complaint is DISMISSED with prejudice.

PAGE 13 – ORDER

**IT IS SO ORDERED.**

DATED this 3rd day of September, 2021.

/s/ Karin J. Immergut  
Karin J. Immergut  
United States District Judge

PAGE 14 – ORDER